**WO**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Matthew Jordan Hemerlein, | No. CV-25-04132-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Beggars Group Limited, | |
| Defendant. | |

Before the Court are (1) Defendant Beggars Group Limited's ("Beggars Group") motion to dismiss Counts Two through Five of Plaintiff Matthew Hemerlein's First Amended Complaint ("FAC") and to strike the FAC in its entirety (Doc. 27); Hemerlein's motion for sanctions (Doc. 28); Hemerlein's motion for leave to file a sur-reply (Doc. 34); and Hemerlein's requests for judicial notice (Docs. 38, 39). The motion to dismiss and to strike will be granted as to the motion to dismiss and denied as to the motion to strike, and the remaining motions will be denied.

**I.**

Hemerlein filed his complaint in November 2025, requesting declaratory and injunctive relief to prevent Namecheap, Inc., a domain name registrar, from transferring the domain name beggars.ai after a World Intellectual Property Organization ("WIPO") decision ordering that the domain name be transferred to Beggars Group. (*See* Doc. 1.) With the complaint, he filed a motion for a temporary restraining order. (Doc. 3.)

After a status conference (*see* Doc. 19), the Court denied Hemerlein's motion for a

temporary restraining order but gave Hemerlein leave to file a motion for a preliminary injunction and set a hearing on the anticipated motion. (*See* Doc. 20.) Later, the parties agreed that Beggars Group would not seek to enforce the WIPO decision pending resolution of this action and any appeals. (*See* Doc. 23.) The Court therefore vacated the preliminary injunction hearing and related deadlines. (Doc. 25.)

Hemerlein also filed the FAC. (Doc. 21.) Broadly, the FAC alleges that Hemerlein, a recording artist and composer, entered into an exclusive recording contract with Beggars Group's record label, "4AD." (Doc. 21 at 1.) Hemerlein was "in a vulnerable position" at the time and relied on "legal counsel who secretly represented [Beggars Group] in other matters" but who did not disclose the conflict to Hemerlein. (*Id.*) "Over the next decade," Beggars Group did not honor its obligations under the contract, and when Hemerlein "attempted to document these issues and exercise his First Amendment rights by registering the domain beggars.ai and preparing a critical, non-commercial website," Beggars Group sought to have the domain name transferred. (*Id.*)

In the FAC, Hemerlein asserts claims for (1) declaratory relief that his registration and use of the beggars.ai domain name is "lawful, non-commercial, and protected by the First Amendment" and he is entitled to retain the domain name; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) equitable relief, "including rescission or partial rescission" of a contract between the parties; (5) declaratory relief that a conflict of interest and attorney misconduct "tainted" the contract such that Beggars Group "should not be permitted to rely on the contract"; and (6) injunctive relief preventing Beggars Group from "taking any action to transfer, cancel, or otherwise interfere with his registration and use of beggars.ai." (*Id.* at 11-14.)

Beggars Group moved to dismiss Counts Two through Five of the FAC and to strike the entire FAC. (Doc. 27.) Beggars Group argues that Counts Two through Five—premised on the recording contract—are subject to a forum selection clause and are required to be brought in the United Kingdom. (*Id.* at 4-5.) Beggars Group also argues these claims are subject to dismissal under Rule 12(b)(6) because Beggars Group is not a party to the cited

contract and because the claims are time-barred. (*Id.* at 5-7.) Finally, Beggars Group argues the entire FAC should be stricken because it does not comply with this District's Local Rules concerning formatting and requests that "the Court strike the pleading in its entirety with instructions to comply with the local rules when refiling an amended complaint focused solely on its allegations and claims related to the UDRP decision." (*Id.* at 8.) This motion is fully briefed. (Docs. 29, 32.)

Pertaining to the motion to dismiss, Hemerlein moved for leave to file a sur-reply, arguing that Beggars Group's reply introduced new matter to which he should be permitted to respond. (Doc. 34.) This motion is fully briefed. (Docs. 35, 37.) He also requested judicial notice of several exhibits he argues are relevant to the Court's resolution of the motion to dismiss. (*See* Docs. 38, 39.) These requests are also fully briefed. (Docs. 41, 42.)

Finally, Hemerlein moved for sanctions against Beggars Group and its counsel under the Court's inherent authority, arguing that Beggars Group omitted "highly probative facts" in its motion to dismiss that "create[d] a materially misleading impression." (Doc. 28.) This motion is fully briefed. (Docs. 33, 36.)

## II.

The Court first considers Beggars Group's request to strike the FAC in its entirety for failure to comply with the Local Rules. (Doc. 27 at 8.) Beggars Group argues that, contrary to the requirements of the Local Rules, the FAC is not double-spaced, exceeds 28 lines per page, uses a font size smaller than 13 point, has one-inch—as opposed to 1.5-inch—margins, and does not use numbered pages. (*Id.*) Hemerlein argues in response that Beggars Group has not shown prejudice in its ability to respond to the FAC, that as a pro se litigant his pleadings should be liberally construed, and striking his pleading for "technicalities" would run afoul of Federal Rule of Civil Procedure 1, which requires that the rules be "employed by the court . . . to secure the just, speedy, and inexpensive determination of every action and proceeding." (Doc. 29 at 12.)

"Compliance with LRCiv 7.1[] helps ensure that filings may be easily read by the Court and all parties." *Radha v. Colvin*, No. CV-15-01400-PHX-ESW, 2016 WL 4253960,

at *1 n.1 (D. Ariz. Aug. 11, 2016). LRCiv 7.1(d)(5) provides that, "for violation of this Local Rule, the Court may order the removal of the offending document." The Court agrees that the FAC does not comply with the Local Rules' formatting requirements, but the Court declines to strike the FAC. *See Benson v. Energy Sols., Inc.*, No. CV-13-2201-PHX-LOA, 2014 WL 2773781, at *1 (D. Ariz. June 19, 2014) (agreeing that the "Local Rules[] allow, but do not require, [the] Court to strike Defendants' Motion because of [a technical] oversight" (citation omitted)); *Day v. LSI Corp.*, No. CIV 11-186-TUC-CKJ, 2012 WL 13026911, at *1 n.2 (D. Ariz. Jan. 5, 2012) ("While the Court does not seek to diminish the importance of compliance with all applicable rules, the Court declines to base its ruling on any such non-compliance."). Ultimately, the FAC is legible, and as Hemerlein argues, Beggars Group does not appear to have suffered any prejudice due to these deficiencies. *Cf. Pro. Programs Grp. v. Dep't of Com.*, 29 F.3d 1349, 1353 (9th Cir. 1994) (stating that "a departure from local rules that affects *substantial rights* requires reversal" and that a "departure is justified . . . if the effect is so slight and unimportant that the sensible treatment is to overlook [it]" (third alteration in original) (emphasis added) (quotation marks omitted)). It would not "secure the just, speedy, and inexpensive determination of [this] action" to require a new amended complaint that complies with the formatting requirements of the Local Rules. Fed. R. Civ. P. 1. Any amended complaint would surely suffer from the same alleged substantive deficiencies raised in Beggars Group's motion to dismiss, as discussed later in this Order, and would prompt a new round of Rule 12 briefing, delaying resolution of the parties' dispute and expending unnecessary resources.

Although the Court declines to strike the FAC for noncompliance with the Local Rules at this time, Hemerlein is warned that he is required to comply with the Local Rules in future papers filed with the Court. *See Leon v. Meggitt PLC*, No. CV-13-00111-TUC-CKJ, 2015 WL 13650029, at *1 n.1 (D. Ariz. May 6, 2015) (noting that a pro se litigant violated LRCiv 7.1(b) and that "[p]ro se litigants are held to [the] same procedural rules as litigants with counsel").

. . . .

- 4 -

**III.**

The Court next considers Beggars Group's motion to dismiss Counts Two through Five and Hemerlein's related motions for judicial notice and for leave to file a sur-reply.

**A.**

Generally, when assessing the sufficiency of a complaint under Rule 12(b)(6), the Court may not consider material outside the pleadings. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *abrogated on other grounds as stated in G.B. by and through G.B. v. U.S. Env't Prot. Agency*, 172 F.4th 1042, 1055 (9th Cir. 2026); *see also* Fed. R. Civ. P. 12(d). "There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."). Rule 201 of the Federal Rules of Evidence permits courts to take judicial notice of "adjudicative fact[s]" that are "not subject to reasonable dispute," meaning the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a)–(b). Courts cannot take judicial notice of disputed facts contained in documents susceptible to judicial notice, however. *See Khoja*, 899 F.3d at 999. Thus, courts must "clearly specify" the fact or facts being judicially noticed. *Id.*

Hemerlein requests that the Court take judicial notice of multiple exhibits. (*See* Docs. 38, 39, 40.) Hemerlein's filings are unclear as to the universe of documents he wants the Court to consider and for what purpose. One request for judicial notice contains six exhibits (Doc. 38), a supplemental request contains twelve exhibits (Doc. 39), and a notice of errata "corrected" the "operative exhibit set" to ten exhibits (Doc. 40). Worse, the requests themselves contain little explanation of the exhibits' relevance to the motion to dismiss (other than broad statements about relevance to corporate structure) and often do

not identify what specific facts from the documents are requested to be judicially noticed. (*See* Doc. 39 at 1 ("These records bear directly on issues raised by [the] Motion to Dismiss . . . , including corporate structure, ownership, consolidation practices, disclosed control relationships, and operational overlap evidence relevant to Defendant's assertions regarding separateness, operations, and control."); *see also* Doc. 40-1 at 2 (describing the kind of documents attached but not clearly identifying specific facts to be noticed from those documents).) In some instances, where Hemerlein did provide the information to be gleaned from specific documents, he requested not notice of specific facts but an inference to be drawn from the document. (*See* Doc. 38 at 2 ("United Kingdom Companies House PSC filing . . . reflecting the identity of the individual person with significant control and the stated nature of control.").) And, because Hemerlein did not include these documents with his response to the motion to dismiss, the Court is left without a clear understanding of how these documents relate to his arguments.

Beggars Group opposes Hemerlein's requests for judicial notice, arguing that the requests "are attempts to file unauthorized surreplies in support of his Response to [the] Motion to Dismiss" and that the "purported new evidence existed and could have been included in his Response to [the] Motion to Dismiss." (Doc. 41 at 1.) Beggars Group also argues that the documents do not support Hemerlein's request for leave to amend and do not help Hemerlein's alter ego arguments that were made in his response to the motion to dismiss. (*See id.* at 2.) In reply, Hemerlein argues that if the Court does not consider the documents in connection with the motion to dismiss, the Court should consider them "as supporting Plaintiff's request for leave to amend." (Doc. 42 at 1.) He then argues that the documents support his arguments in opposition to the motion to dismiss. (*See* Doc. 42 at 4-6.)

The Court declines to consider the documents Hemerlein submitted after the motion to dismiss was fully briefed. First, the Court agrees with Beggars Group that these documents should have been submitted, if at all, with Hemerlein's response to the motion to dismiss, in which he could have explained the relevance of the documents to his

arguments and what specific facts he sought to be judicially noticed. From the Court's review of the submitted documents, all were dated or accessible at the time Hemerlein filed his response. (*See* Docs. 38-1, 40-1); *Limcaco v. Wynn*, No. 2:20-cv-11372-RSWL-MAAx, 2021 WL 5040368, at \*6 (C.D. Cal. Oct. 29, 2021) (declining to take judicial notice of documents that were "available before the close of briefing and even before the operative FAC was filed," so the court could "see[] no reason why Plaintiff could not have discovered and included any pertinent information from those documents in her oppositions").

Second, Hemerlein's failure to include these documents in his response renders the Court unable to discern how the documents pertain to his arguments or what the Court is meant to draw from them in relation to those arguments. It is not the Court's responsibility to sift through Hemerlein's exhibits and make his arguments for him. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("As the Seventh Circuit observed in its now familiar maxim, judges are not like pigs, hunting for truffles buried in briefs." (citation modified)); *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) ("The parties are not the first to ask this Court to take judicial notice of voluminous materials without identifying the specific contents pertinent to their arguments. In fact, dumping large swaths of material into a request for judicial notice has become commonplace. This catch-all approach to requesting judicial notice, however, is not consistent with the law's requirements."); *United States v. CNA Fin. Corp.*, 168 F. Supp. 2d 1109, 1121 (D. Alaska 2001) ("[I]t is not the court's responsibility to sift through . . . exhibits submitted by the parties to find support for a party's arguments.").

Third, Hemerlein's requests for judicial notice could reasonably be construed as an attempt to "supplement allegations included in the complaint," which is improper—a plaintiff "cannot utilize the documents to amend the complaint and defeat [a] motion[] to dismiss." *Okla. Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1350 (C.D. Cal. 2014); *see also Potter v. Meza*, No. CV-25-00663-PHX-DWL, 2026 WL 35276, at \*7 (D. Ariz. Jan. 6, 2026) ("Plaintiff asks the Court to take 'judicial notice' of this [document] as a means of arguing—as he could have done in his response brief—that the [document]

supports his position that his claims . . . should not be dismissed. Plaintiff cannot use a motion for judicial notice in this fashion." (citation omitted)).

The Court will thus not consider the submitted exhibits in ruling on the motion to dismiss.

**B.**

As mentioned, Beggars Group moves to dismiss the contract claims in the FAC (Counts Two through Five), arguing that a forum selection clause requires litigation of those claims in the United Kingdom, that the claims are untimely, and that the claims fail because Beggars Group is not a party to the contract. (*See* Doc. 27.) For the following reasons, these claims will be dismissed for failure to state a claim with leave to amend.

**1.**

Beggars Group argues that the recording contract upon which Counts Two through Five are premised is governed by English and Welsh law and selects those courts as the exclusive forum for resolving disputes. (*See* Doc. 27 at 4-5.) The contract, which Hemerlein attached as an exhibit to the FAC, provides that it "shall be exclusively governed by the laws of England and Wales and exclusively subject to the jurisdiction of the courts of England and Wales." (Doc. 21-1 at 14.) Beggars Group argues that the contract claims therefore must be dismissed and Hemerlein must bring them in the United Kingdom. (*See* Doc. 27 at 4-5.)

Hemerlein argues that Beggars Group is using its status as a non-signatory to the contract as a sword and a shield and that Beggars Group cannot enforce the forum selection clause if its argument is accepted that it is not a party to the contract. (Doc. 29 at 2-3.) He confirms that "Beggars Group did not sign the Recording Agreement and is not named in the forum-selection clause," so he contends it cannot enforce the forum selection clause. (*Id.* at 5.) Hemerlein also argues that enforcement of the forum selection clause would "contravene strong public policy . . . because California Labor Code § 2855 is nonwaivable and caps personal-services recording contracts at seven years," so enforcement would "forc[e] [him] into a forum that does not apply the protective policy at issue." (*Id.* at 3, 6.)

Finally, Hemerlein argues that the "clause was procured through overreaching and inequity," so enforcement of the forum selection clause would be unjust. (*Id.* at 6-7.) Hemerlein requests that, if the Court enforces the forum selection clause, it allow "limited targeted discovery" on the relationship between Beggars Group and 4AD. (*Id.* at 8.)

The Court ultimately need not address the parties' arguments at this time about whether the forum selection clause should be enforced. "[A] case filed in a district that falls within [28 U.S.C.] § 1391 may not be dismissed under . . . Rule 12(b)(3)," even in the presence of a forum selection clause. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013). A forum selection clause "is irrelevant to the court's § 1391 analysis" of whether venue is improper, *Tech. Credit Corp. v. N.J. Christian Acad., Inc.*, 307 F. Supp. 3d 993, 1002 (N.D. Cal. 2018), which is the focus of a Rule 12(b)(3) motion. Thus, contrary to Beggars Group's argument (Doc. 27 at 4), a motion to dismiss under Rule 12(b)(3) is not the proper vehicle to enforce a forum selection clause. *See JPaulJones, L.P. v. Zurich Gen. Ins. Co. (China) Ltd.*, 533 F. Supp. 3d 999, 1004 (D. Or. 2021) (noting that "[a]lthough the Ninth Circuit had previously held that motions to dismiss based on a forum selection clause are properly construed as Rule 12(b)(3) motions to dismiss for improper venue, the United States Supreme Court has since instructed" otherwise) (citation omitted)). Rather, a forum selection clause "may be enforced through a motion to transfer under [28 U.S.C] § 1404(a)" or through the "doctrine of *forum non conveniens*." *Atl. Marine*, 571 U.S. at 59-60.

Beggars Group does not analyze whether venue is proper in this District notwithstanding the forum selection clause. *See id.* at 57 (stating that venue is proper if "the requirements of § 1391(b) are met, irrespective of any forum-selection clause"). Because Beggars Group must make its arguments in a motion to transfer under § 1404(a) or through *forum non conveniens*, dismissal under Rule 12(b)(3) is not proper. The Court thus denies this aspect of the motion to dismiss, without prejudice to Beggars Group filing a motion to transfer under § 1404(a) or invoking *forum non conveniens*, if proper. *See Hosick v. Catalyst IT Servs., Inc.*, 143 F. Supp. 3d 1072, 1077 (D. Or. 2015) (denying Rule

12(b)(3) motion because § 1404(a) was the "proper mechanism for evaluating the . . . forum-selection clause").

**2.**

The Court next addresses Beggars Group's arguments that Counts Two through Five should be dismissed because Beggars Group is not a party to the contract upon which those claims are premised. Beggars Group notes that the contract was between 4AD and Hemerlein, and Beggars Group cannot be liable for contract claims simply because of its status as 4AD's parent company. (Doc. 27 at 6-7.)

"It goes without saying that a contract cannot bind a nonparty." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). English law—which governs the relevant contract—"requires a defendant to be either a party to or obligated by the contract allegedly breached" to be sued for breach of contract. *See W. Afr. Ventures Ltd. v. Ranger Offshore, Inc.*, No. 4:17-CV-00548, 2020 WL 1898344, at *14 (S.D. Tex. Feb. 5, 2020).[1] Hemerlein does not dispute that Beggars Group was not a party to the contract. (*See* Doc. 21 at 3 ("Plaintiff and 4AD entered into an Exclusive Recording Agreement . . . ."); *id.* at 12 ("The Recording Contract is a valid and enforceable contract between [Hemerlein] and 4AD, an affiliate of Defendant."); Doc. 21-1 at 2.) Rather, he argues that Beggars Group may be sued as an alter ego of 4AD. (*See* Doc. 29 at 10-11.) But Hemerlein has not demonstrated that English law endorses such a theory of breach of contract, and even if he had, there are no facts alleged in the FAC to suggest that Beggars Group is the alter ego of 4AD such that it can be sued on that agreement.

The FAC alleges that Beggars Group owns 4AD (Doc. 21 at 3), then alleges in conclusory fashion that Defendant "controlled" and "acted through" 4AD (*id.* at 3, 12). Such allegations are insufficient to survive a Rule 12(b)(6) motion. *See Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023) ("Conclusory allegations cannot defeat a motion to dismiss."). The exhibits attached to the FAC likewise generally do not implicate Beggars Group. (*See* Doc. 21-2 at 2 ("i just spoke to Rupert, 4AD's lawyer . . . ."); Doc. 21-3 at 2

---

[1] The parties have not briefed whether English law would apply under a conflict-of-law analysis, so the Court assumes that English law applies.

(letter on 4AD letterhead); Doc. 21-4 (email correspondence with an individual with a 4AD email domain); Doc. 21-8 (email correspondence with individuals with a 4AD email domain); Doc. 21-11 (royalty statements on 4AD letterhead).) In one exhibit, Hemerlein's counsel stated that she would "call Brigitte at Beggars to find out what happened" (Doc. 21-5 at 2), and Hemerlein told his counsel that if something was "uncomfortable . . . because of [her] ties with beggars it[] [was] totally cool" (*id.* at 5), but this does not in and of itself support a reasonable inference that Beggars Group is the alter ego of 4AD or that Beggars Group "controlled" or "acted through" 4AD during the course of the contract. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (stating that a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001). Nor do documents or correspondence involving Beggars Group that are dated after the contract was formed in 2013 (Doc. 21 at 3) and terminated in 2014 (*id.* at 5). (*See* Doc. 21-6 at 2 (correspondence in March 2025); Doc. 21-7 (undated letter that correspondence suggests was sent in 2016).)

At bottom, the FAC lacks well-pleaded factual allegations to support Hemerlein's argument that Beggars Group is the alter ego of 4AD. And although Hemerlein argues in his response that Beggars Group is "not a stranger to the recording relationship" due to, among other things, "unified ownership and control, leadership overlap, holding-out branding, and . . . involvement in royalty and exploitation-related communications" (Doc. 29 at 10), the Court may not consider these arguments because they are not alleged in the FAC and, even if they had been, such conclusory allegations are insufficient. *See Sinclair*, 61 F.4th at 678; *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("The 'new' allegations contained in the . . . opposition motion . . . are irrelevant for Rule 12(b)(6) purposes. In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss. The focus of any Rule 12(b)(6) dismissal— both in the trial court and on appeal—is the complaint." (citations omitted)).

Hemerlein also cites California law without explaining why it would apply in this action, especially considering the contract's choice of law provision. (Doc. 29 at 10-11.) But even if California law applied, dismissal would still be appropriate. "Under California law, it is well settled that a non-party or non-signatory to a contract cannot be held liable for a breach of that agreement." *Carolina Cas. Ins. Co. v. Lanahan & Reilley, LLP*, No. C 10-04108 SBA, 2011 WL 3741004, at \*3 (N.D. Cal. Aug. 25, 2011) (collecting cases); *see also Webster v. HSBC Bank USA Nat'l Ass'n*, No. CV 11-10798 DMG (AGRx), 2012 WL 13012700, at \*2 (C.D. Cal. Mar. 5, 2012) ("It is axiomatic that one who is not a party to a contract cannot be held liable for its breach."); *see also Grigg v. Griffith Co.*, No. 1:13-CV-1379 AWI JLT, 2013 WL 5754986, at \*3 (E.D. Cal. Oct. 23, 2013) ("A plaintiff may not maintain a claim for breach of the implied covenant of good faith against a person who was not a party to an underlying contract."). Although California law appears to recognize an alter ego theory exception to this rule, *see Safety PPE, LLC v. Skanda Grp. of Indus. LLC*, No. CV 21-3967-JFW(PDx), 2023 WL 2558549, at \*9 (C.D. Cal. Feb. 13, 2023), as mentioned above, the FAC lacks sufficient allegations to support an alter ego theory. *See, e.g.*, *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) ("The mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law."); *12180 Stratford Tr. v. Unigard Indem. Co.*, No. LA CV17-06643 JAK (GJSx), 2019 WL 2158226, at \*6 (C.D. Cal. Feb. 12, 2019) ("Conclusory allegations of alter ego status are insufficient to state a claim, and a plaintiff must allege specific facts supporting both of the necessary elements [under California law], unity of interest and inequitable result." (quotation marks omitted)).

Because Hemerlein's contract-based claims purport to impose liability on Beggars Group based on a contract to which Beggars Group is not a party, Hemerlein has not sufficiently shown that an alter ego theory is available to impose such liability, and the FAC lacks sufficient facts to support an alter ego theory, these claims will be dismissed. Because it is possible that Hemerlein could amend his complaint to cure these deficiencies, however, the Court will grant him leave to amend these claims. *See Doe v. United States*,

58 F.3d 494, 497 (9th Cir. 1995) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." (citation omitted)).[2] Because the Court dismisses the claims on these grounds, the Court does not address the parties' statute of limitations arguments at this time.[3]

## C.

The Court will deny Hemerlein's motion for leave to file a sur-reply. (Doc. 34.) He argues that Beggars Group "introduce[d] new matter and a new dispositive framework" in its reply. (*Id.* at 1.) The supposed "dispositive framework" is that Beggars Group argued that Hemerlein conceded that Beggars Group was not a party to the contract. (*Id.* at 2.) The supposed "new matter" is that Beggars Group argued Hemerlein had not alleged—and could not allege—that Beggars Group is the alter ego of 4AD such that it could be liable under the contract. (*Id.* at 2-4.)

"Neither Federal Rule of Civil Procedure 7 nor the local rules of practice for this District provide for the filing of a sur-reply, and sur-replies are not authorized by any other rules of procedure absent express prior leave of the Court." *Dragonas v. Macerich*, No. CV-20-01648-PHX-MTL, 2021 WL 3912853, at *6 (D. Ariz. Sep. 1, 2021) (citation omitted). "Sur replies are generally discouraged and only allowed in the most extraordinary of circumstances." *Doria v. Yavapai Coll. Dist. Governing Bd.*, No. CV-25-08043-PCT-MTL, 2025 WL 2411051, at *2 (D. Ariz. Aug. 20, 2025) (quotation marks omitted). Courts

---

[2] The Court denies Hemerlein's request for discovery to properly allege facts in support of his alter ego theory. (*See* Doc. 29 at 11.) "[T]he Supreme Court has been clear that discovery cannot cure a facially insufficient pleading." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021). "[C]ase law does not permit plaintiffs to rely on anticipated discovery to satisfy Rules 8 and 12(b)(6); rather, pleadings must assert well-pleaded factual allegations to advance to discovery." *Id.*; *see also Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) ("The Supreme Court has stated . . . that plaintiffs must satisfy the pleading requirements of Rule 8 *before* the discovery stage, not after it."). The Court does not have any discretion to permit discovery to enable Hemerlein to meet his pleading requirements. *See Mujica*, 771 F.3d at 593 n.7 ("To the extent that any [out-of-circuit] decisions suggest[] that courts retain discretion to permit discovery whenever a plaintiff has failed to satisfy Rule 8's plausibility standard, it is simply incompatible with [Supreme Court precedent].").

[3] The Court did not consider the exhibits attached to Beggars Group's motion to dismiss in coming to its conclusions, so the Court need not address whether such exhibits are properly considered in a Rule 12(b)(6) analysis.

have permitted sur-replies when, for example, a movant raises new arguments or material in a reply brief. *See id.* But "arguments made *in response* to those set forth in the opposing party's opposition brief are not new; they are rebuttal arguments, which are permitted in a reply brief." *Facebook Inc. v. Namecheap Inc.*, No. CV-20-00470-PHX-GMS, 2020 WL 6585534, at *6 n.3 (D. Ariz. Nov. 10, 2020) (quotation marks omitted).

The Court finds that the arguments Hemerlein claims were "new" were permissible rebuttal arguments. First, Beggars Group's argument that Hemerlein conceded Beggars Group's status as a non-party to the contract was an interpretation of statements made in his response, which Beggars Group was entitled to assert in reply. That Hemerlein disagrees with the import of statements he made in his response—or Beggars Group's interpretation of them—does not warrant a sur-reply. *Cf. United States ex rel. Calilung v. Ormat Indus., Ltd.*, No. 3:14-cv-00325-RCJ-VPC, 2015 WL 1321029, at *6 (D. Nev. Mar. 24, 2015) ("[A]n alleged mischaracterization of the law alone surely cannot be a sufficient basis for a surreply; otherwise, litigants would constantly seek to have the last word in brief filing by claiming that the other side presented the law in an unfavorable manner.").

Second, Beggars Group's argument that the FAC failed to allege and could not allege facts to support an alter ego theory was likewise permissible rebuttal. In the motion to dismiss, Beggars Group argued that the contract claims should be dismissed because it was not a party to the contract. (Doc. 27 at 6-7.) In response, Hemerlein agreed that Beggars Group was a non-signatory to the contract and therefore could not enforce the forum selection clause in the contract (Doc. 29 at 5), but argued that Beggars Group was still properly named as a party under alter ego principles (*id.* at 10-11, 13). Beggars Group was permitted to address Hemerlein's alter ego argument in its reply—such is its purpose. *See Brinker v. Axos Bank*, No. 22-cv-0386-MMA (DDL), 2025 WL 1507154, at *2 (S.D. Cal. May 27, 2025) ("Ninth Circuit courts have made it clear that reply briefs may address points raised in opposition."); *Real Est. Training Int'l, LLC v. Nick Vertucci Cos.*, No. SACV 14-0546 AG (DFMx), 2014 WL 12576646, at *3 (C.D. Cal. Aug. 4, 2014) ("The purpose of a reply brief is to address new arguments presented by the opposing party's

opposition papers . . . .").

"[T]he party that files a motion gets the last word on the motion." *Gayler v. Neven*, No. 2:15-cv-00972-APG-CWH, 2016 WL 7404864, at *1 (D. Nev. Dec. 20, 2016). Hemerlein "seeks to have the last word" instead, which is "not a valid basis for a sur-reply." *Prism Data Techs., Inc. v. TomoCredit, Inc.*, No. 24-cv-2300-RSH-MMP, 2026 WL 483176, at *3 (S.D. Cal. Feb. 20, 2026). Hemerlein's motion for leave to file a sur-reply will therefore be denied.

## IV.

Hemerlein moves for sanctions against Beggars Group and its counsel under the Court's inherent authority. (Doc. 28.) He argues that the motion to dismiss "use[d] categorical factual assertions while omitting highly probative facts in [Beggars Group's] possession and . . . already in the record." (*Id.* at 3.) Specifically, Hemerlein argues that Beggars Group's assertions that (1) it was not a party to the contract and (2) it was not identified and did not appear in the contract were "materially misleading" because Beggars Group did not disclose supposed facts like those contained in documents attached to the motion for sanctions that "bear[] directly on privity." (*Id.* at 4-5.) Yet he agrees that "Beggars Group did not sign the Recording Agreement" and that "Beggars Group is not named as a contracting party in the four corners of that agreement." (Doc. 36 at 1.)

As best as the Court can tell from Hemerlein's briefing, he complains that Beggars Group did not offer up facts or evidence showing the relationship between it and 4AD in its motion to dismiss. But Beggars Group did not deny the corporate relationship between it and 4AD; rather, it argued that the mere fact of corporate relationship and ownership as pleaded in the FAC was insufficient to render it liable on a contract to which it is not a party. (*See* Doc. 27 at 2, 6-7.) Although Hemerlein might have preferred that Beggars Group had chosen not to invoke the forum selection clause, it was not Beggars Group's responsibility to make Hemerlein's arguments for him that it could not enforce the forum selection clause as a non-party to the contract.

The Court also rejects Hemerlein's argument that it was misleading for Beggars

Group not to offer affirmative evidence of its corporate relationship. First, Beggars Group was required to make its Rule 12(b)(6) arguments based on the allegations in the FAC, not based on evidence that might become part of the record if Hemerlein's claims survive a Rule 12(b)(6) challenge and proceed to discovery. *See Mack v. California*, No. ED CV 19-209-AG (SP), 2019 WL 7877391, at *5 (C.D. Cal. Aug. 9, 2019) ("[N]o declarations or evidence are required in support of motions to dismiss. Rather, motions to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure are based on the allegations in the Complaint."), *report and recommendation adopted*, 2019 WL 8883453 (C.D. Cal. Sep. 24, 2019). Second, it was Hemerlein who invoked an alter ego theory in his response to the motion to dismiss. Beggars Group was entitled under Rule 12(b)(6) to challenge Hemerlein's alter ego theory by pointing to a lack of allegations in the FAC to support that theory. Beggars Group was not required to proactively address the arguments it thought Hemerlein could make in response, nor was it required to prove a negative (*i.e.*, that there is no evidence that Beggars Group could ever be found to be the alter ego of 4AD), especially at the pleading stage.[4] *See White v. Crisis24, Inc.*, No. CV 23-10371-MWF (MARX), 2025 WL 2074488, at *1 (C.D. Cal. May 14, 2025) ("[T]he applicable standard does not require that a litigant anticipate and respond to all possible arguments in anticipation of what its counterparty may do. That is the essence of why Reply briefs exist."). If Hemerlein had material to support his arguments that the Court could properly consider in ruling on a Rule 12(b)(6) motion, it was his responsibility to provide it in his response.[5]

Again, the "focus of any Rule 12(b)(6) dismissal . . . is the complaint." *Schneider*,

---

[4] Indeed, unless the evidence was subject to judicial notice or incorporated by reference into the FAC, the Court could not have considered it anyway. *See Khoja*, 899 F.3d at 998.

[5] Hemerlein attached over a dozen exhibits with his motion for sanctions, which he argues supports his alter ego theory and therefore shows that Beggars Group engaged in sanctionable conduct. (*See* Doc. 28 at 4-5.) Only some of the exhibits were attached to the FAC. As discussed in connection with Hemerlein's requests for judicial notice, the appropriate place for those exhibits would have been, if at all, with his response to the motion to dismiss. Hemerlein is cautioned against scattering evidence and arguments across the record in serial briefing in future filings. The Court thus does not consider them and therefore need not consider dueling exhibits attached to Beggars Group's response and Hemerlein's reply.

151 F.3d at 1197 n.1. Beggars Group did not engage in sanctionable conduct by focusing on the allegations in the FAC, which as discussed above, were lacking. Hemerlein's motion will be denied.[6]

**V.**

Accordingly,

**IT IS ORDERED** that Beggars Group's motion to dismiss and to strike (Doc. 27) is **granted** as to the motion to dismiss and **denied** as to the motion to strike. Counts Two through Five of the FAC are **dismissed with leave to amend**.

**IT IS FURTHER ORDERED** that, no later than **June 17, 2026**, Hemerlein may file a Second Amended Complaint limited to curing the deficiencies identified in this Order. In addition to filing a clean copy of the Second Amended Complaint, Hemerlein must, consistent with LRCiv 15.1, file a notice of filing the amended pleading that attaches of a copy of the amended pleading indicating in what respect it differs from the FAC.

**IT IS FURTHER ORDERED** that Hemerlein's motion for sanctions (Doc. 28) is **denied**.

**IT IS FURTHER ORDERED** that Hemerlein's motion for leave to file a sur-reply (Doc. 34) is **denied**.

**IT IS FINALLY ORDERED** that Hemerlein's requests for judicial notice (Docs. 38, 39) are **denied**.

Dated this 3rd day of June, 2026.

Michael T. Liburdi
Michael T. Liburdi
United States District Judge

---

[6] The Court thus does not address the parties' arguments about whether the documents submitted with their briefing support or undermine Hemerlein's alter ego theory.

- 17 -